IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LUMOS, INC., a Utah corporation,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>LIFESTRENGTH, LLC, a Utah limited liability company,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br><br><br>Case No. 2:12-cv-1196-TC<br><br>Judge Tena Campbell |

Plaintiff Lumos, Inc. (Lumos) has filed a Motion for Partial Summary Judgment. In its motion, Lumos requests that the court grant summary judgment on its claim that LifeStrength, LLC (LifeStrength) infringed Lumos' copyright in its collection of instructional videos entitled, "KT Tape Instructional Videos."

The court agrees with Lumos and grants Lumos' Motion for Partial Summary Judgment.

BACKGROUND

Lumos is a company that designs, develops, and distributes sports medicine products. Lumos' flagship product line is a brand of kinesiology tape, known as KT Tape. The KT Tape is marketed as a product that may help reduce soreness and accelerate recovery of injured muscles.

In 2009, Lumos created and published a video that discussed general tips for applying KT Tape. In January 2012, Lumos published a collection of short instructional videos demonstrating the technique for applying KT Tape for specific ailments, such as inner knee pain and finger jams. These videos were published on www.youtube.com and www.kttape.com.

On October 24, 2012, Lumos registered the videos with the United States Copyright Office and was granted a certificate of registration, number PA0001811032, for the KT Tape instructional videos. Lumos filed a supplemental registration to correct two errors on October 28, 2013. The supplemental registration removed the General Instruction video from the copyright and changed the publication date from January 18, 2012, to January 19, 2012. This supplemental registration was granted by the Copyright Office.

Defendant LifeStrength is also a company that designs and supplies kinesiology tape. LifeStrength's brand of kinesiology tape is known as StrengthTape. Lumos alleges that from July 2012 through October 2012, LifeStrength created and published several instructional videos on www.vimeo.com and www.strengthtape.com that infringed Lumos' copyright. Specifically, Lumos claims that twenty[1] of LifeStrength's videos correspond with a video found in Lumos' KT Tape instructional video series. Lumos alleges that LifeStrength: copied the organizational structure of the videos; made identical use of non-essential and unique wording throughout the videos; had near verbatim lists of potential causes of injury found in the same order at the beginning of each video; used nearly identical disclaimer language; and suggested nearly identical complementary treatments.

ANALYSIS

I.  **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material

---

[1]Lumos originally included its General Instructions video as part of its motion and copyright registration. It has since amended the copyright with a supplemental registration and withdrawn the General Instructions video from its motion.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

II.     **Copyright Infringement**

To prevail on a copyright infringement claim, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Blehm v. Jacobs, 702 F.3d 1193, 1199 (10th Cir. 2012) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). The copying element of an infringement claim has two components. Id. This involves two distinct inquiries: (1) "whether Defendant[], as a factual matter, copied Plaintiff's work" and (2) "whether, as a mixed issue of fact and law, those elements that were copied were protected." Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir. 1996) (citing Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 832 (10th Cir. 1993)). This second inquiry requires that the plaintiff establish "substantial similarity" between the "allegedly infringing work and the elements of the copyrighted work that are legally protectable." Blehm, 702 F.3d at 1199 (citing Jacobsen v. Deseret Book Co., 287 F.3d 936, 942-43 (10th Cir. 2002)). Liability for copyright infringement will only attach if LifeStrength copied the protectable elements of Lumos' videos. Gates Rubber Co., 9 F.3d at 833.

1.      Lumos Owns a Valid Copyright

A certificate of registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright. Gates Rubber Co., 9 F.3d at 831-32 (citing 17 U.S.C. § 410(c)). Once this presumption under 17 U.S.C. § 410(c) has been established, the defendant has the burden of overcoming it. Id. (citing Autoskill v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th

Cir. 1993)). In rebutting the presumption of validity, the defendant may "contend that a copyright registration is invalid because of noncompliance with formal registration requirements or rules, such as the withholding or misstatement of information in connection with the registration application." L.A. Printex Indus., Inc. v. Le Chateau, Inc., No. 11 Civ.4248 (LTS), 2012 WL 987590, *4 (S.D.N.Y. Mar. 23, 2012).

If the certification of registration contains "any inaccurate information," it still satisfies the registration requirement unless the applicant intends to defraud the Copyright Office by including the information knowing that it is inaccurate, and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 852-53 (9th Cir. 2012). "[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." Aeropostale, 676 F.3d at 853 (quoting Urantia Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997)); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.20[B][1] (1990) [hereinafter Nimmer on Copyright] ("[A] misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.").

An owner of a copyright may file an application for supplementary registration "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d); 37 C.F.R. § 201.5. "'The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration,' 17 U.S.C. § 408(d), and the earlier registration is not 'expunged or cancelled,' 37 C.F.R. § 201.5(d)(2)."

Aeropostale, 676 F.3d at 853.

Lumos filed a single application for the copyright registration of its videos. This "single work" registration allowed Lumos to pay a single filing fee for the registration of all the videos included in the KT Tape instructional video collection.

In order to qualify as a "single work" registration, the Register of Copyrights directs:

(i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:

(A) In the case of published works: All copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same.

37 C.F.R. § 202.3(b)(4). Registration as a "published" collection requires that all of the "constituent elements of the collection have been published together *as a collection*." Le Chateau, 2012 WL 987590 at *3 (emphasis in original); see also United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1259 (9th Cir. 2011) ("When one registers a collection of works in a single copyright, it can be registered either as a 'published' or an 'unpublished' collection. A necessary element of a published collection copyright is that the collection is sold, distributed, or offered for sale concurrently.").

LifeStrength disputes the validity of Lumos' copyright. LifeStrength argues that Lumos' copyright registration is invalid because the KT Tape instructional video collection was not published concurrently or as a single unit as is required for a single work registration of a published collection. Lumos claims that its erroneous inclusion of the General Instructions video does not invalidate its registration because it did not intend to defraud the Copyright Office and the Copyright Office permitted the correction of the error by granting Lumos' supplemental registration. The court agrees with Lumos.

Lumos' error in itself does not invalidate the registration or render the certificate of registration incapable of supporting an infringement action.[2]  See 17 U.S.C. § 411(b); 2 Nimmer on Copyright § 7.20[B][1].  When viewed in the light most favorable to Lumos, the record does not demonstrate that Lumos knowingly included the General Instructions video in its application for copyright registration such that the error was anything other than an inadvertent mistake or that Lumos intended to defraud the Copyright Office.  Upon learning of its registration error, Lumos filed a supplemental registration to correct its error.  After filing the supplemental registration, the Copyright Office issued a certificate of supplementary registration.  The Copyright Office's decision to approve the supplemental registration after it was notified of the error shows that the error was not one that "if known, would have caused the Register of Copyrights to refuse registration."  See 17 U.S.C. § 411(b)(1)(B); Aeropostale, 676 F.3d at 854 (finding that the plaintiff's error, the inclusion of two previously published designs in a work registered as an unpublished collection, in its certificate of registration did not "invalidate the registration or render the certificate of registration incapable of supporting an infringement action.").  Accordingly, Lumos is presumed to own a valid copyright and Lumos' previous

_____

[2]LifeStrength argues that Lumos' inclusion of the General Instructions video was a "serious omission," which if disclosed, "would have caused the Copyright Office to not register the application" and "[s]erious omissions such as this do not require a showing of fraud on the Copyright Office."  (Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., Docket No. 26 at 17.)  In support of its argument, LifeStrength cites Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc., 896 F. Supp. 2d 223 (S.D.N.Y. 2012).  But the court in Family Dollar Stores concluded that the inclusion of thirteen "previously unpublished designs—including the design that [was] the basis for the lawsuit—in a collection of purportedly unpublished designs" was a material error because "the error invalidate[d] the registration as to the very design that [was] the subject of [the] lawsuit."  Id. at 231-32.  That is not the case here.  Lumos filed a supplemental registration that removed the General Instructions video from the copyright application and the Copyright Office still approved the supplemental registration. Lumos also removed the General Instructions video from its motion for partial summary judgment so the video is no longer at issue in this case.

registration error does not bar its action against LifeStrength for infringement of the copyright.

> 2. Protected Components of Lumos' Copyrighted Material were Copied by LifeStrength

> **A. LifeStrength "Copied" Lumos' Work**

A plaintiff can establish that the defendant copied his program either through the presentation of direct evidence, or through indirect evidence. Gates Rubber Co., 9 F.3d at 832. If direct evidence that LifeStrength copied Lumos' videos is lacking, Lumos can establish copying by showing that LifeStrength (1) had access to the copyrighted work, and (2) that there are probative similarities between the copyrighted material and the allegedly copied material. See id.

> > i. LifeStrength had Access to the Videos

LifeStrength does not contest Lumos' assertions that LifeStrength had access to the copyrighted videos.

> > ii. There are Probative Similarities between Lumos' Videos and LifeStrength's Videos

"Probative similarity is a less demanding test than substantial similarity and requires only that the works are similar enough to support an inference that the defendant copied the plaintiff's work." Blakeman v. The Walt Disney Co., 613 F. Supp. 2d 288, 304 (E.D.N.Y. 2009) (quoting Eve of Milady v. Moonlight Design Inc., No. 98 Civ. 1549 (LAP), 1998 WL 849074, *4 (S.D.N.Y. Aug. 11, 1998)). To establish probative similarity, the plaintiff "must establish that there are similarities between the two works that would not be expected to arise if the works had been created independently." Id. To complete this analysis, the court must analyze the entire work, and not just the protectable elements. Id.

As demonstrated by Lumos, each of LifeStrength's instructional videos uploaded to

www.vimeo.com and LifeStrength's website are similar to Lumos' videos found on Lumos'

website and on YouTube.com.  Lumos provided the court with a chart[3] containing the transcripts

from Lumos' and LifeStrength's instructional videos.  (See Table of Transcripts, Ex. C to Pl.'s

Supplemental Mem., Docket No. 35-3.)  For instance, in Lumos' video "KT Tape: AC Joint," the

instructor describes what may cause pain in the AC joint: "Some <u>causes of this may be collisions</u>

<u>involving the top of the shoulder or separations causing ligament damage</u>."  (AC Joint KT Tape

Video, Ex. D to Pl.'s Supplemental Mem., Docket No. 35; <u>see also</u> Table of Transcripts, Ex. C to

Pl.'s Supplemental Mem., Docket No. 35-3 at 2 (emphasis added).)  In the StrengthTape video,

"STRENGTHTAPE®: AC Joint," the instructor states that AC joint pain "<u>may be caused by</u>

<u>collisions involving the top of the shoulder or separations causing ligament damage</u>."  (AC Joint

StrengthTape Video, Ex. E to Pl.'s Supplemental Mem., Docket No. 35; <u>see also</u> Table of

Transcripts, Ex. C to Pl.'s Supplemental Mem., Docket No. 35-3 at 2 (emphasis added).)

    In Lumos' "KT Tape: Back of Knee" video, the instructor describes what may cause pain

in the back of the knee and how KT Tape helps treat the area: "Some <u>causes of this may be</u>

<u>tendinitis, a baker's cyst or swelling behind the knee, popliteal tendinitis, hamstring tightness,</u>

<u>hyper extension of the knee, or general overuse</u>.  KT Tape <u>helps treat this area by relaxing and</u>

<u>supporting the muscles, reducing pressure in the area, and may increase circulation</u>."(Back of

Knee KT Tape Video, Ex. H to Pl.'s Supplemental Mem., Docket No. 35; <u>see also</u> Table of

_____

[3]LifeStrength argues that the court should not rely on Lumos' list with "subjective
highlighting" because "[l]ists of similarities between [] two works are inherently subjective and
unreliable, particularly where the list contains random similarities, and many such similarities
could be found in very dissimilar works."  (Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J.,
Docket No. 26 at 8 (quoting <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1257 (11th Cir.
1999)).)  The court has independently reviewed and compared Lumos' videos and
StrengthTape's videos in addition to considering Lumos' lists.

Transcripts, Ex. C to Pl.'s Supplemental Mem., Docket No. 35-3 at 8 (emphasis added).)  In the StrengthTape video, "STRENGTHTAPE®: Back of Knee," the instructor describes the pain and StrengthTape's function: "This type of pain may be caused by tendinitis, a baker's cyst or swelling behind the knee, popliteal tendinitis, hamstring tightness, hyperextension of the knee, or general overuse.  This application helps treat this area by relaxing and supporting the muscles, reducing pressure in the area, and can increase circulation."  (Back of Knee StrengthTape Video, Ex. I to Pl.'s Supplemental Mem., Docket No. 35; see also Table of Transcripts, Ex. C to Pl.'s Supplemental Mem., Docket No. 35-3 at 8 (emphasis added).)

The disclaimers on the two AC joint videos are also word-for-word identical: "Muscle and joint soreness can be indications of serious medical problems that should be diangosed by competent medical professionals."  (Back of Knee KT Tape Video, Ex. H to Pl.'s Supplemental Mem., Docket No. 35; Back of Knee StrengthTape Video, Ex. I to Pl.'s Supplemental Mem., Docket No. 35; see also Table of Transcripts, Ex. C to Pl.'s Supplemental Mem., Docket No. 35-3 at 4 (emphasis added).)  Many of the other videos contain identical information and instructions, including lists of causes for pain, numerical degrees for placement of the tape, and percentages to stretch the tape.

In viewing Lumos' and LifeStrength's videos, the court concludes that Lumos has established that there are enough similarities between the two parties' works that would not be expected to arise if the works had been created independently.  Accordingly, the court finds that LifeStrength copied Lumos' KT Tape instructional videos.

### B.     The Copied Elements of the Videos are Protectable

This inquiry requires the court to determine which elements of Lumos' work are actually protectable because liability for copyright infringement will only attach if LifeStrength copied the

protectable elements of Lumos' videos.  See Gates Rubber Co., 9 F.3d at 833.  "To impose such liability, the court must find substantial similarity between those aspects of Plaintiff's [videos] which are legally protectable and the Defendant's [videos]."  Country Kids, 77 F.3d at 1284.  "A finding of substantial similarity does not require that an infringing work be a 'virtual copy' of a protected one.  Nor is the *sine qua non* of substantial similarity whether an ordinary observer would 'confuse' the two works in their entirety."  Id. at 1288 (emphasis in original).  The traditional test is whether the accused work is sufficiently similar that an ordinary reasonable observer would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value.  Id.  "The touchstone of the analysis is the 'overall similarities rather than the minute differences between the two works.'"  Id. (quoting Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 618 (7th Cir. 1982)).

To make this determination, the court applies the Tenth Circuit's "abstraction-filtration-comparison" test.  Close to my Heart, Inc. V. Enthusiast Media LLC, 508 F. Supp. 2d 963, 968 (D. Utah 2007); see also Country Kids, 77 F.3d at 1285 n.5.

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work.  Then, we filter out the nonprotectable components of the product from the original expression.  Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

Close to my Heart, 508 F. Supp. 2d at 968 (quoting Country Kids, 77 F.3d at 1284-85).  The "filtration" step "should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain, information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular [work] under examination."  Gates Rubber Co., 9 F.3d at 834.

i.      Abstraction

The first step in the analysis "involves dissecting the allegedly infringed [work]."  Gates Rubber Co., 9 F.3d at 834.  At the abstraction step, the court must divide the work at issue into parts that may be deserving or undeserving of copyright protection.[4]

Here, the court finds that Lumos' videos have: (1) a main purpose; (2) a product; (3) video titles; (4) an introduction to the video and product; (5) a scene and characters, including the instructor and the model; (6) spoken script; (7) a method of application; (8) an overall organizational structure from the beginning to the end; and (9) a written disclaimer.  The spoken script in the video includes: (i) an introduction to the specific video; (ii) a description of the joint, muscle, or area of the body at issue; (iii) a list of potential causes of injury; (iv) instructions for the application of the tape; (v) a list of complementary treatments; and (vi) a spoken disclaimer.

ii.      Filtration

After identifying the various parts of the work, the court must filter out the elements of the instructional videos that are not protected by copyright.  The filtration step of the test helps the court "separate ideas from expression and eliminate from the substantial similarity analysis those portions of a work that are not eligible for copyright protection."  Gates Rubber Co., 9 F.3d at 834.

Copyright protection subsists of "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  Copyright protection will only extend to the components of a work that are original to the author and possess at least some minimal degree of

---

[4]See e.g., Gates Rubber Co., 9 F.3d at 835 ("[A] computer program can often be parsed into at least six levels of generally declining abstraction: (i) the main purpose, (ii) the program structure or architecture, (iii) modules, (iv) algorithms and data structures, (v) source code, and (vi) object code.").

creativity." Feist Publ'ns, Inc., 499 U.S. at 345, 348 (emphasis added).

Copyright protection is given to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Other materials that may not be copyrighted include words and short phrases "such as names, titles, and slogans," "mere listing of ingredients or contents," and "works consisting entirely of information that is common property containing no original authorship, such as, . . . standard calendars, height and weight charts, tape measures and rules, schedules of sporting events, and lists or tables taken from public documents or other common sources." 37 C.F.R. § 202.1. And no author may copyright "the facts he narrates." Feist Publ'ns, Inc., 499 U.S. at 345 (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556 (1985)).

Here, the purpose or concept of the video, to instruct purchasers of kinesiology tape on how to use and apply the tape, is a concept or idea that is not protected by copyright law. See 17 U.S.C. § 102(b). The product itself, kinesiology tape, is also not protectable. The titles of the videos, i.e. "Back of Knee," "Bicep," "Finger Jam," etc., are not protectable because they are titles or words that describe parts of the human body and do not contain the requisite originality or creativity necessary for copyright protection.

The court also finds that the scene and characters, which include an instructor and a model, are not protectable. "Under the scenes a faire doctrine, expressive elements of a work of authorship are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting." Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1374 (10th Cir. 1997) (citing Gates Rubber Co., 9 F.3d at 838). In an instructional video for the demonstration of, for example, a medical application or treatment, it is

common for an instructor and a model to be used to show the viewer how to apply the product. For the same reason, an introduction to the video or product is also not protectable, because it is common for any instructional video to have an introduction.[5]

Lumos does not claim to have a copyright on its method for applying kinesiology tape (see Pl.'s Mot. for Partial Summ. J., Docket No. 25 at 21) and the court will not address it.

The written disclaimer at the end of Lumos' videos states: "Muscle and joint soreness can be indications of serious medical problems that should be diagnosed by competent medical professionals. This video is not meant to replace professional treatment. All information provided is for educational use and is not intended to be used in place of professional care." (KT Tape Videos, Exs. D, F, H, J, L, N, P, R, T, V, X, Z, BB, DD, FF, HH, JJ, LL, NN, PP to Pl.'s Supplemental Mem., Docket No. 35.) LifeStrength argues that the written disclaimer is not protected by copyright and cites dicta from a footnote in R.W. Beck, Inc. v. E3 Consulting, LLC, 577 F.3d 1133 (10th Cir. 2009), which states in its entirety: "It may be worth noting that if specific language disclaiming liability has been interpreted by a court, others may wish to use the same language because they can be confident of what the legal consequences would be. A slight change in wording might be interpreted differently." Id. at 1145 n.3. But the Tenth Circuit in R.W. Beck declined to rule on whether statements disclaiming liability are protected because the argument was not raised before the district court.

LifeStrength also argues that disclaimers are not protectable by copyright because other kinesiology tape companies use similar language in their disclaimers. The court recognizes that

---

[5]The court does not address the expressive elements of the introduction to the KT Tape instructional videos because Lumos does not argue that StrengthTape copied any element of its graphic introduction.

many disclaimers will be similarly worded because they all attempt to disclaim liability. But there are several ways to achieve this same result. Here, it appears that Lumos independently and carefully selected the meaningful words to craft its disclaimer. The disclaimer's wording is a product of Lumos' own efforts to shield itself from liability and is deserving of copyright protection.

The remaining components of the videos include the spoken script in the videos and the overall organizational structure from the beginning to end.

Copyright does protect "the language that an author uses to explain, describe, or express whatever ideas or useful arts she may have discovered or created . . ., along with the artistic way in which the author draws or illustrates those ideas or useful arts . . . ." R.W. Beck, Inc., 577 F.3d at 1144 (citing Pamela Samuelson, Why Copyright Law Excludes Systems and Processes From the Scope of its Protection, 85 Tex. L. Rev. 1921, 1923, 1944-52 (2007)). While facts are not copyrightable, compilations[6] of facts are within the subject matter of copyright. Feist Publ'ns, Inc., 499 U.S. at 345.

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively . . . These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

Id. at 348 (citing 1 Nimmer on Copyright §§ 2.11[D], 3.03). "Thus, if the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in

---

[6]The court uses the term "compilations" to refer to the use of facts and medical information compiled within Lumos' and LifeStrength's videos. Use of the term does not imply that the videos themselves are "compilations and derivative works" as defined in 17 U.S.C. §§ 101, 103.

this written expression.  Others may copy the underlying facts from the publication, but not the precise words used to present them."  Id.  If the selection and arrangement of words and facts are original, these elements of a work are eligible for copyright protection.  Id. at 349.

The spoken script in Lumos' instructional videos includes: (i) an introduction to the specific video; (ii) a description of the joint, muscle, or area of the body at issue; (iii) a list of potential causes of injury; (iv) instructions for the application of the tape; (v) a list of complementary treatments; and (vi) a spoken disclaimer.

The scripts themselves are composed of the specific, creative, and original language that Lumos selected to explain, describe, and express the method of application in its videos.  But Lumos has chosen to split the scripts into specific parts.  Lumos argues that its copyrights protect the expressions Lumos has "chose[n] in the creation of the KT Tape Instructional Videos."  (Pl.'s Mot. for Partial Summ. J., Docket No. 25 at 21.)  Lumos explains that these expressions include "the specific language Lumos selected to provide the instructions, the order that causes of injury are enumerated in the videos, the order and selection of suggested complimentary treatments, the language in the disclaimers at the end of the videos, and the entire organizational structure of the videos."  (Id. at 22.)  Lumos does not claim to have a copyright on the medical information utilized in the videos, including the causes of pain or injury and complimentary treatments.

The court does not agree with Lumos that the "specific language Lumos selected to provide the instructions" is protectable.  The introduction to Lumos' "Ankle Stability" video states: "Hi, I'm Chris Harper, and with me is Makayla, and we're here to demonstrate an application for ankle stability.  This could be used for any number of issues involving ankle

pain."[7]  (Ankle Stability KT Tape Video, Ex. F to Pl.'s Supplemental Mem., Docket No. 35.)  In

its charts comparing the Lumos video transcripts with the LifeStrength video transcripts, Lumos

has emphasized the words and phrases "demonstrate . . . application for ankle stability" and

"involving ankle pain."  (Table of Transcripts, Ex. C to Pl.'s Supplemental Mem., Docket No.

35-3 at 6 (emphasis added).  But this language consists of words and short phrases too commonly

used in sports medicine and instructional tutorials to be protected by copyright law.  See CMM

Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1520 (1st Cir. 1996); see also Perma

Greetings, Inc. v. Russ Berrie & Co., Inc., 598 F.Supp. 445, 448 (E.D. Mo. 1984) ("Clichéd

language, phrases and expressions conveying an idea that is typically expressed in a limited

number of stereotypic fashions, [sic] are not subject to copyright protection.").  A person

experiencing ankle pain will search for and view the video showing how to apply kinesiology

tape to his or her ankle.  These words and short phrases describing ankle pain and explaining the

purpose of the kinesiology tape video are not original or creative, and are not protectable

expression.

     Lumos next argues that the lists of causes of injury and complementary treatments are

also deserving of copyright protection because Lumos selected the order that the causes of injury

and complimentary treatments are presented, and specifically selected which causes of injury and

---

[7]Lumos' introductions in its other videos include: "Hi, I'm Chris Harper and with me is
Makayla, and we're here to demonstrate an application for the pain in the back of the knee," "I'm
Chris Harper, and with me is Melissa, and we're here to show you the application for bicep
pain," "Hi I'm Chris Harper and with me is Melissa, and we're here to demonstrate the
application for finger jam.  Finger jam may be due to a compressive force or catching a ball and
hitting the end of the finger, causing inflammation or pain in a joint."  (KT Tape Videos, Exs. H,
J, N to Pl.'s Supplemental Mem., Docket No. 35.)  Though the court recognizes that
LifeStrength's introductions are very similar to Lumos', the court does not believe that the words
and phrases used deserve copyright protection because they are not sufficiently creative and are
too common to introductory settings.

16

complimentary treatments to mention to its audience. In response, LifeStrength contends that the potential causes of injury and the complimentary treatments are not protectable because they are in the public domain.

But Lumos is not claiming that the causes of injury and complimentary treatments themselves are protectable. Lumos' contention is that the order and selection of the specific injuries and treatments should be protected because Lumos exercised creativity in choosing and organizing the lists in each video. The court agrees with Lumos that the order and selection of causes of injury and complimentary treatments is protected by copyright law. Lumos' selection and arrangement of the causes of injury and treatments for each video are protectable so long as they were independently compiled by Lumos and required some minimal amount of creativity.

Lumos independently selected words to describe the causes of injury, chose which causes of injury to include, and arranged the causes of injury in each of its videos. For instance, in Lumos' video for Plantar Fasciitis, the instructor describes what may cause the pain and states: "This may be due from overtraining, poor fitting or worn shoes, weight gain, over pronation, or abnormal foot structure." (Plantar Fasciitis KT Tape Video, Ex. LL to Pl.'s Supplemental Mem., Docket No. 35.) The instructor also lists the complimentary treatments as "stretching, and massage of the foot and calf, and use of anti-inflammatory medications such as ibuprofen." (Id.)

In its opposition, LifeStrength directed the court to a WebMD article to show that causes of injury and complimentary treatments are in the public domain. But WebMD's articles on exercise-related injuries support Lumos' argument that it independently chose and organized the lists of injuries and treatments. On the WebMD directory page for Plantar Fasciitis, the causes of injury and possible treatments are listed as "rolling the feet inward while walking; having high arches or flat feet; and running, walking, or standing for [long] periods of time. . . . Treatment

17

includes resting the feet, doing calf stretches and towel stretches several times daily, and wearing shoes with good arch support and a cushioned sole."[8]  The causes of injury and treatments selected are different, are arranged in a different order, and include different language than Lumos' language in its video on Plantar Fasciitis.  Clearly, Lumos exercised independent judgment in its description, selection, and organization of the causes of injury and complimentary treatments.  Accordingly, the order and selection of the specific injuries and treatments are protected by copyright law.

Lumos also alleges that its spoken disclaimers are subject to copyright protection.  The court agrees for the same reasons stated above for the written disclaimer.

And finally, Lumos claims that the entire organizational structure of its videos is deserving of copyright protection.

LifeStrength appears to argue that the merger doctrine prevents Lumos' organization of the videos from being protected by copyright.  See Enter. Mgmt. Ltd., Inc. v. Warrick, 717 F.3d 1112, 1117 (10th Cir. 2013) ("When a work expresses an idea in the only way it can be expressed, courts deny those expressions protection under the 'merger doctrine' to avoid giving the author a monopoly over the underlying idea.").  LifeStrength maintains that the structure of Lumos' videos is not "an original protectable work of authorship" because "nearly every late night product commercial would be infringing."  (Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., Docket No. 26 at 11.)  LifeStrength points out that "[i]n each of these videos there is an introduction, presentation of a problem with associated symptoms, and a solution with instructions on how to use the product."  (Id. at 12.)  But this is an oversimplification of the

---

[8] WEBMD, Fitness & Exercise, Plantar Fasciitis Directory, http://www.webmd.com/fitness -exercise/plantar-fasciitis-directory.

organization of Lumos' instructional videos.

Any instructional video could express the same ideas by using a different method of organization. Lumos chose to organize its videos by introducing the purpose of the video, describing the part of the body at issue and the source of pain, listing the likely causes of injury, demonstrating the tape application, recommending tips for application, listing complimentary treatments, providing a spoken disclaimer, referring the viewer to the KT Tape website for more information, and concluding with a more thorough, written disclaimer. Other methods of instruction might not use the video medium. The same information could be listed on a website or on the product packaging. A demonstrative flyer containing instructions and pictures could also be used. If an instructional video was created, it could be organized with a disclaimer first, followed by an introduction. The complimentary treatments and tips for successful application could be listed near the beginning of the video rather than the end. Some of these pieces of information could be presented concurrently in a sidebar or beneath the video in the description section.

Because there are many ways to organize and express the ideas depicted in Lumos' videos, the expression does not "merge" with the underlying ideas of instructional or promotional videos.

Based on the requirements of originality, creativity, and that only expressions and not mere ideas are protectable, the court finds that Lumos' specific script used in its videos (when more than just single words or short phrases[9]), its spoken and written disclaimers, the order,

---

[9]The court agrees with LifeStrength that words and phrases such as "demonstrate" and "relieve pressure to reduce pain" (see Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., Docket No. 26 at 10) are not entitled to copyright protection. Similarly "percent stretch" is not protectable because it is a short phrase, which is specifically excluded from copy right protection,

compilations, and selections of causes of injury and suggested complimentary treatments, and the entire organizational structure of the videos are protected elements.

> iii.    Comparison

After filtering out the unprotectable elements of a work, the next step is to determine whether "those protectable portions of the original work that have been copied constitute a substantial part of the original work—i.e. a matter that is significant in the plaintiff's [product]." Country Kids, 77 F.3d at 1287 (quoting Gates Rubber Co., 9 F.3d at 839).  This requires the court to compare the remaining protected elements to the allegedly infringing work to see if the two are "substantially similar."  Fisher v. United Feature Syndicate, Inc., 203 F.3d 834, *2 (10th Cir. Feb. 7, 2000) (unpublished table decision).

The Tenth Circuit has explained the test for substantial similarity as follows:

> The traditional test for substantial similarity is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's [protectable] expression by taking material of substance and value. . . . The essence of this test is whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same. . . . The touchstone of the analysis is the overall similarities rather than the minute differences between the two works.

Country Kids, 77 F.3d at 1288 (citations and internal quotations omitted).

Whether works are substantially similar is generally a question for the finder of fact.  See Jacobsen, 287 F.3d at 943.  However, "the court can monitor the 'outer limits' of similarity if 'reasonable minds' could not differ on the question."  Id. (quoting King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089 (10th Cir.1999)).

---

see 37 C.F.R. § 202.1, and because the idea of stretching something to a certain percentage can only be described in a limited number of ways.  See CMM Cable Rep., 97 F.3d at 1520.

While a finding of substantial similarity does not require that an infringing work be a "virtual copy" of the protected work, see Country Kids, 77 F.3d at 1288, "[v]erbatim copying of substantial portions represents unjustifiable appropriation of the expression of an idea; available alternatives exist for expressing ideas." Eisenman Chem. Co. V. NL Indus., Inc., 595 F.Supp. 141, 146 (D. Nev. 1984) (citing Sid & Marty Krofft Television v. McDonald's Corp., 562, F.2d 1157, 1171 n.17 (9th Cir. 1977)).

While carefully watching Lumos' and StrengthTape's videos, the court observed many similarities between the videos. There are several instances of verbatim copying in StrengthTape's videos. For example, most of LifeStrength's videos contain statements about causes of injury that are word-for-word identical or strikingly similar to Lumos' statements on causes of injury. Both parties' videos sometimes contain identical descriptions of why their kinesiology tape is helpful for treating an injury. And most of the disclaimers used in each of the videos are identical or essentially indistinguishable. The table below illustrates only some of these similarities.

| | KT Tape | StrengthTape |
|---|---|---|
| Disclaimers at End of Videos | Muscle and joint soreness can be indications of serious medical problems that should be diagnosed by competent medical professionals. . . . All information provided is for educational use and is not intended to be used in place of professional care. | Muscle and joint soreness can be indications of serious medical problems that should be diagnosed by competent medical professionals. This video is for educational purposes only and should not be used in place of professional medical treatment. |
| AC Joint Video | | |
| Causes of Injury | Some causes of this may be collisions involving the top of the shoulder or separations causing ligament damage. | This may be caused by collisions involving the top of the shoulder or separations causing ligament damage. |
| Back of Knee Video | | |

| | | | |
|---|---|---|---|
| Causes of Injury | Some causes of this may be tendinitis, a baker's cyst or swelling behind the knee, popliteal tendinitis, hamstring tightness, hyper extension of the knee, or general overuse. | This type of pain may be caused by tendinitis, a baker's cyst or swelling behind the knee, a popliteal tendinitis, hamstring tightness, hyper extension of the knee, or general overuse. |
| Helpfulness of Tape | KT Tape helps treat this area by relaxing and supporting the muscles, reducing pressure in the area, and may increase circulation. | This application helps treat this area by relaxing and supporting the muscles, reducing pressure in this area, and can increase circulation. |
| Bicep Video | | |
| Causes of Injury | Pain of the bicep . . . causes may include tears or strains to the muscle itself, nerve, ligament, or tendon damage. | Pain in the bicep may be caused by tears and strains to the muscle itself, the nerve, the ligament, or tendon damage. |
| Calf Strain Video | | |
| Causes of Injury | Some possible causes for this are tears due to abrupt changes in direction while running, dehydration, and overuse. | This may be caused by abrupt changes in direction while running or speed changes, dehydration, or overuse. |
| Full Knee Support Video | | |
| Describing Usage of the Application for Knee Pain | You can use this application for patella tracking problems, tendon issues, instability, or general knee pain. | You can use this application for patella problems, tendon issues, and instability or general knee pain. |
| Disclaimer for Knee Pain | Please seek care if you have extreme pain or swelling, difficulty walking, or unnatural joint movements. | Please seek care if you have extreme pain, swelling, difficulty walking, or unnatural joint movements. |
| Gluteus Video | | |
| Causes of Injury | . . . some causes may include overuse, hip misalignment, muscle imbalances, sitting or standing for extended periods of time, or abrupt changes in training. | This may be caused by overuse, hip misalignment, muscle imbalances, sitting or standing for extended periods of time, or abrupt changes in training. |
| Groin Video | | |

|  |  |  |
|---|---|---|
| Helpfulness of Tape | KT Tape helps treat this condition by relaxing the muscles, providing support and stability, and may increase circulation. | You can use this application for relaxing the muscles, providing extra support and stability, and it may increase circulation. |
| Causes of Injury | Some causes may include hyper extension or hyper abduction of the hip, or abrupt changes in speed or direction. | This may be caused by hyper extension or hyper abduction of the hip, abrupt changes in speed or direction. |
| Hip Flexor Video |  |  |
| Causes of Injury | Some causes of this may be kicking motions, over training, training on hills or stairs, or abrupt starts and stops. | This may be caused by kicking motions, over training, training on hills or stairs, or abrupt starts and stops. |
| Inner Knee Video |  |  |
| Causes of Injury | Some causes of this may be overuse, excessive stress or tightness through the quad and thigh, abrupt changes in direction, or twisting of the knee. | This type of pain may be caused from overuse, excessive stress or tightness through the quad and thigh, abrupt changes in direction, or twisting of the knee. |
| Helpfulness of Tape | KT Tape helps by relieving pressure to reduce pain, relaxing muscles, and may increase circulation. | This application may relieve pressure to reduce pain, relax muscles and increase circulation. |
| Osgood Schlatter Video |  |  |
| Causes of Injury | Some causes of this may be heavy activity during growth spurts or genetic predisposition. | Some of the causes of this may be heavy activity during growth spurts or genetic predisposition. |
| Helpfulness of Tape | KT Tape helps relieve pressure to reduce pain, and may increase circulation. | This application may relieve pressure to reduce the pain and may increase circulation. |

(KT Tape and LifeStrength Videos, Exs. D-QQ to Pl.'s Supplemental Mem., Docket No. 35.)

The court found above that the selection and organization of the causes of injury are protectable. LifeStrength's causes of injury are so similar to Lumos' that they appear to be almost identical for nearly all of the videos. They usually utilize the same selection of causes of

injury for a particular body part and are almost always listed in the same order.  Though the content is factual (Lumos did not invent the causes of injury and the causes themselves are within the public domain), LifeStrength's verbatim copying of Lumos' selection and organization of the causes of injury in the videos appropriates Lumos' original expression.

But the complimentary treatments listed by LifeStrength are not identical to the ones listed by Lumos.  They are not presented in the same order as Lumos' and they do not always contain the same selection of suggested complimentary treatments.  Lumos' listed complimentary treatments differ between videos, for example: "Ice, rest, anti-inflammatory medication such as ibuprofen" and "Light progressive stretching, ice, rest, anti-inflammatory medications such as ibuprofen, and foam rolling."  (AC Joint KT Tape Video; Ex. D to Pl.'s Supplemental Mem., Docket No. 35; Back of Knee KT Tape Video, Ex. H to Pl.'s Supplemental Mem., Docket No. 35.)  But LifeStrength's suggested complimentary treatments are the same for every one of its instructional videos: Rest, ice, massage, medication.

When viewing the organization of the videos, the court finds that the organizational structure of the parties' videos is substantially similar.  Though LifeStrength describes tips for successful application near the beginning of its videos, the remaining organization of the videos is very alike.  Both sets of videos introduce the product, describe the purpose of the video (i.e. an application for inner knee pain), list possible causes of injury, provide instructions on how to apply the tape, list complimentary treatments and complimentary applications (i.e. full knee support application), list the product website, and provide a disclaimer.  The fact that LifeStrength provides a list of supplies and describes tips for application before the instructions, unlike Lumos' videos, does not change the end result.  The essence of the substantial similarity test remains "whether the ordinary observer, unless he set out to detect the disparities, would be

disposed to overlook them, and regard their aesthetic appeal as the same. . . . The touchstone of the analysis is the overall similarities rather than the minute differences between the two works." <u>Country Kids</u>, 77 F.3d at 1288.  Here, an ordinary observer would be inclined to overlook these minute differences and would view Lumos' and LifeStrength's videos as substantially similar.

In sum, substantial similarity exists between the protectable elements of Lumos' KT Tape instructional videos and LifeStrength's StrengthTape instructional videos.  Because of the verbatim copying of the selection and order of causes of injury, the copying of other areas of Lumos' script that are not singular words or short phrases such as describing the usefulness of the tape and the disclaimers, and the similarity in the organizational structure of the videos, the court finds that LifeStrength's videos are so similar to Lumos' videos that an ordinary reasonable person would conclude that LifeStrength unlawfully appropriated Lumos' protectable expression by taking material of substance and value.

ORDER

Accordingly, the court GRANTS Lumos' Motion for Partial Summary Judgment (Docket No. 25).

DATED this 3rd day of September, 2014.

BY THE COURT:

TENA CAMPBELL
United States District Judge